## In re TOM MOORE DISTILLERY CO.
No. 12832.

District Court, W. D. Kentucky.
April 6, 1940.

Arthur. W. Grafton, of Louisville, Ky., for Stanley E. Sloss and Tom Moore Distillery Co.

J. Blakey Helm, of Louisville, Ky., for co-trustees.

Robert Sloss, of Louisville, Ky., for the Reorganized Company.

MILLER, District Judge.

This matter is before the court on various applications for allowances.

The Tom Moore Distillery Company, incorporated under the laws of Michigan, filed these proceedings for reorganization under Section 77B of the Bankruptcy Act, 11 U.S.C.A. § 207, on June 11th, 1938. An audit made at the time of the appointment of the trustees showed assets of a book value of approximately $1,400,000, and liabilities in the proximate amount of $500,-000. The trustees' report filed in April, 1939, stated that liquidation of the current assets would be sufficient to pay all creditors, but after such payment the company would require additional working capital of not less than $200,000 to continue operations and that no reasonable prospects existed for securing the necessary additional capital. Creditors insisted upon immediate liquidation and payment of their claims. Through a period of many months, of trusteeship, beset with numerous difficulties, successful reorganization appeared hopeless. However, through the efforts of interested parties hereafter referred to, a plan was finally approved. Reorganization was completed on January 10, 1940. The report of the co-trustees shows that as of December 31, 1939, there were total assets of $1,065,799.49, current liabilities of only $65,298.22, and a net worth, after reserve for depreciation of approximately $200,000, of $799,607.85.

William H. Hartman was appointed co-trustee on July 1st, 1938, and served continuously and actively throughout the entire period. He has previously received an allowance of $6,000 for services rendered from July 1, 1938, to July 1, 1939. He has applied for an additional allowance of $2,500 for services rendered since July 1, 1939. The debtor company objects to any additional allowance at the present time in excess of $1,500. His co-trustee, Paul Young, a former president

of the company, has served during the same period of time at a salary of $8,000 per annum. Mr. Hartman, by reason of his knowledge of the distillery business and experience in matters of federal taxation, was especially qualified for the position of co-trustee. He has been very diligent in the interest of the debtor company, having given more than 305 working hours on 81 different days to the employment since July 1, 1939. His services have been very beneficial to the company. The amount applied for is, in the opinion of the court, a reasonable one and is accordingly allowed.

Harold R. Smith, attorney of Detroit, Michigan, Max H. Field, attorney of Detroit, Michigan, and Arthur W. Grafton, attorney of Louisville, Kentucky, have made separate applications for allowances in the amount of $7,500 each for services on behalf of stockholders' committees. The debtor company has objected to allowances to these three attorneys in excess of $2,500 each. Each of these three attorneys has filed a detailed statement covering the extent, character and results of the services rendered. Smith was employed shortly after the commencement of the proceedings in this court by a committee of stockholders consisting of Messrs. Carsten Tiedeman, Frank Verbecke, B. J. Ratigan, Dr. Ray W. Hughes and B. Dave Bushaw. This committee represented 782 stockholders out of approximately 1,800, which stockholders held 187,732 shares out of 332,604 shares of common stock outstanding. Field was employed as an attorney by a committee known as the Lyons Committee which represented approximately 40,000 shares of stock. Grafton was employed in March, 1939, as local counsel for the committee represented by Smith and to handle matters in Louisville without requiring Smith's attendance from Detroit. The two committees worked independently of each other for some time, but eventually joined forces about June, 1939. From that time on Grafton acted as local counsel for both committees. The work of these three attorneys was very active and aggressive and except for their resourcefulness the company would not have been successfully reorganized. Over a period of many months creditors were insisting upon immediate liquidation of the company which would have resulted in very little, if any, salvage to the stockholders. Adjudication in bankruptcy and subsequent liquidation was on several occasions delayed by the court solely because of the insistence of these attorneys that their efforts would within a reasonable time produce a satisfactory plan of reorganization. Over the protest of creditors who were insisting upon immediate liquidation, the court at one time appointed a special representative of long experience in the distilling business to spend thirty days in active participation in the conduct of the business for the purpose of reporting to the court whether or not in his opinion there was any probable chance of successful reorganization. This representative reported adversely to any successful reorganization without the addition of substantial capital, which in his opinion would not be attracted by the existing conditions. The trustees reported their inability to submit any plan of their own which would be acceptable and would result in a successful reorganization. After many attempts and numerous disappointments the attorneys for the two stockholders' committees eventually succeeded in getting new capital added to the corporate setup, in paying or settling all outstanding undisputed claims of creditors, and in submitting a plan of reorganization that provided for new management, a resumption of distilling operations and with a retention by stockholders of approximately 50% of their then holdings. Unless unforeseen difficulties are encountered it is reasonably anticipated that the company as reorganized will be able to continue successfully in business. The debtor company does not deny that valuable services were thus rendered by the three applicants, but bases its objection to the allowances as requested on the facts that the current asset condition of the debtor company is not strong; that there was no necessity for two committees representing the same class of security holders, and that the employment of three attorneys resulted in a duplication of labor which should not be charged to the company. Of these three reasons the only one that is given much consideration by the court is the financial ability of the company to pay the amounts requested without serious impairment of its operating capital. The oral hearing on the applications in question, which lasted several hours, disclosed that it was impractical for the two committees to consolidate until during the later stages of the proceedings. If each committee was entitled to function separately each committee was entitled to its own legal

representation. Since the major portion of the stockholders resided in Michigan, the employment of Michigan attorneys who would be in a position to contact them and confer with them was authorized. The employment of Grafton as local attorney in Louisville was consistent with the facts of the situation. In addition to being in Louisville where he could attend to many matters requiring the presence of some attorney in conferences with the trustees and the court, he gave a great deal of time in the preparation of papers and in conferences which if not done by him would have had to be done by one of the other attorneys representing the stockholders. In this connection there was no duplication of labor. No doubt there was some duplication of work in some of the conferences and correspondence involved between the three attorneys, but during the last stages of the proceedings the three attorneys acted somewhat in the nature of a partnership, pooling their joint efforts in order to reach a difficult objective. If one firm of lawyers, employed to represent a committee of stockholders, is justified in assigning two or three of its members or associates to the performance of a legal task, and the services of more than one lawyer are reasonably necessary for such performance, the ultimate allowance made to that firm will take into consideration the time and efforts spent by all of the individual lawyers properly engaged in the work. I see no valid objection to three lawyers, coming from different firms, pooling their respective efforts, and each being paid for the work performed by him if the problem is one that reasonably requires the services of more than one attorney. Smith's application shows that he gave more than 500 working hours to the employment; Field's application shows that he gave 300 working hours, in addition to twenty days away from Detroit, to the emloyment; Grafton's application shows that he gave 545 working hours to the employment, including three trips to New York. Although Grafton's employment was of shorter duration than that of Smith and Field, yet the time devoted to the work by him was at least equal to if not more than the time given by either of the other two, and was during a period when the prospects of reorganization were very discouraging. Although the time given by Field was somewhat less than that given either by Smith or Grafton, and his committee was comparatively small, yet it was primarily through his efforts that Mr. Ira Guilden was located and finally induced to become interested in the proposed reorganization which ultimately resulted in the necessary new capital being added to the corporate setup. Except for Mr. Guilden's ultimate interest and participation in the matter the reorganization would not have been accomplished. Smith represented the dominant committee and gave approximately the same amount of his time to the employment as did Grafton. On the whole the court feels that these three attorneys should be compensated equally for their services, and that except for the financial condition of the debtor company the amounts requested would be allowed. In proceedings of this kind, however, allowances should be moderate rather than liberal, and due consideration should be given to the ability of the reorganized company to make payment. On account of this consideration the allowances are reduced to $5,000 a piece, which is a reduction of 33⅓% from the amounts requested.

Grafton has applied for reimbursement of expenses in the amount of $233.96 consisting of traveling and hotel expenses, long-distance telephone calls and telegrams, itemized in detail. The debtor company makes no objection to this claim and it is accordingly allowed, subject to the credit of $100 heretofore received by him on account. Smith has applied for reimbursement of expenses in the amount of $1,344.06. This claim is itemized in detail and consists chiefly of various items totaling $71.37 for postage, express charges and extra stenographic services, nine items of traveling and hotel expenses, in the total amount of $497, an item of $452.38 for preparation and distribution of letters to stockholders by a letter agency, and many items for long-distance and telegraphic communications. The debtor company objects to this allowance in full on the ground that certain items are not reimbursable and that the traveling and hotel expenses are excessive. We believe that the allowance of compensation to an attorney for legal services includes the usual and ordinary expenses of operating a law office and that such items as postage, express charges and stenographic services, whether usual or extra, are not reimbursable. In re Mercantile Arcade Realty Corp., D.C., 20 F.Supp. 397. The account for traveling and hotel expenses includes

386

eight trips by Smith from Detroit to Louisville and return, with the time spent in Louisville varying from one to three days. We agree with the debtor company's contention that the amounts actually expended on these trips were more than should be properly charged to the debtor company, and that a per diem allowance of $7.50 plus the cost of a round trip railroad and pullman ticket, with few incidentals, should be the limit of the reimbursable charge. Using this yard stick we have three trips of one day each at $35 each, two trips of two days each at $42.50 each, and three trips of three days each at $50 each, making a total of $340 instead of $497 applied for. The ninth item of $60.95 for a trip by Kelly to Louisville on July 1st, 1938, is disallowed as no reason is shown for the necessity of Kelly making this trip with Smith on the date in question. We realize that other District Courts have refused to make allowances for traveling and hotel expenses for out-of-town attorneys. In re Wayne Pump Co., D.C., 9 F.Supp. 940; In re National Radiator Co., D.C., 29 F.Supp. 804. It is our view that while this may be the proper rule in the usual case, yet it should not be applied in a case where stockholders are located in a state distant from where the proceedings are held. Under such circumstances stockholders should be entitled to representation by local counsel with whom they can confer. The other items in Smith's expense account are held as not being those usually included in the usual operation of a law office. Smith's expense account is accordingly reduced by $228.37 and allowed in the amount of $1,117.69 subject to a credit of $200 previously paid to him. Field has applied for reimbursement of expenses in the amount of $965 which includes $522 for traveling expenses, $279.78 for hotel expenses and $78.91 for telephone and telegraph services. These amounts are not itemized in any way and the objection of debtor company that action upon them be deferred until fully itemized by the applicant is sustained.

 Trabue, Doolan, Helm and Stites, attorneys for the co-trustees, have applied for an allowance of $8,000, in addition to a payment of $4,000 previously made to them on account. The debtor company objects to any additional allowance at this time in excess of $2,000. These attorneys have itemized their services by days, by subject matter, but not by hours. At the hearing on applications for allowances this claim insofar as it pertained to services rendered since December 1st, 1938, was broken down into a total of 635½ hours. Debtor company claims that a great many of these hours were unnecessary, were of no benefit to the company in the proceedings and were expended without express or implied authority to do so. Debtor company further contends that the greater portion of the legal services by the trustees' counsel was of a routine nature and considering the financial condition of the company this allowance should be conservative. Nevertheless, these attorneys gave approximately a year and one-half in actively representing the co-trustees which service has covered, in addition to the work involved in these proceedings, some litigation and many corporate transactions. Several settlements of large claims made by creditors and taxing authorities have been advantageously made. This allowance is, however, subject to the same considerations as are present in making the allowances to the attorneys for the two stockholders' committees, namely, that irrespective of the time involved and services rendered the ability of the reorganized company to pay must be given strong consideration. Considering all of these factors, the court feels that a total allowance of $8,500 is reasonable and should be allowed, making an additional $4,500 to be paid at the present time. This is the same total allowance made to Mr. Hartman, co-trustee with whom these attorneys worked. These attorneys have also applied for reimbursement of expenses in the amount of $68.76. This account is itemized and includes traveling expenses and long-distance telephone calls. It appears reimbursable with the exception of one item of $1.14 for postage. It is accordingly allowed in the amount of $67.62.

 B. Dave Bushaw has filed an application in the amount of $25 for accounting services and for reimbursement of expenses in the amount of $34.81 for long-distance telephone calls. No objection is made to this application and it appearing proper it is accordingly allowed in its total amount of $59.81.